

**SO ORDERED.**

**SIGNED this 04 day of December, 2006.**

_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BRENT ANDREW JEWELL, and | ) | Case No. 05-15703 |
| CASEY RENAE JEWELL, | ) | Chapter 7 |
| Debtors. | ) | |
| | ) | |
| J. MICHAEL MORRIS, Trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 05-5787 |
| | ) | |
| 21st MORTGAGE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

In this adversary proceeding, J. Michael Morris, trustee of the debtors' bankruptcy estate, exercises his hypothetical lien creditor avoidance powers to challenge the adequacy of defendant 21st Mortgage Corporation's (Creditor) efforts to perfect its security interest in debtors' mobile

1

home.  The Trustee appears by Sarah J. Newell of Klenda, Mitchell, Austermann & Zuercher. Defendant Creditor appears by Tyson C. Langhofer of Stinson Morrison Hecker.

Jurisdiction

The Court has jurisdiction over this adversary proceeding.[1]  This adversary proceeding is a core proceeding.[2]

Factual Background

The parties stipulated to the relevant facts that govern this matter.[3]  The Jewells purchased a manufactured home from a dealer on April 18, 2000.  They executed a note and security agreement by which they granted a purchase money security interest in the home to the dealer.  Immediately thereafter, the dealer assigned its paper to Associates Housing Finance, Inc. ("Associates").  On May 8, 2000, Associates delivered to the Sedgwick County, Kansas Treasurer (the "Filing Office") a Notice of Security Interest (NOSI), a completed Title and Registration Application, and the requisite fee.  The application stated that Associates had a first lien on the home.  In addition to the application, Associates submitted the executed certificate of title transferred from the dealer to the debtors.  On the reverse of the certificate, Associates was listed as a lien holder.  The parties stipulate that the Filing Office forwarded the documents to the Kansas Department of Revenue (KDR) which then issued a title.  For unexplained reasons, when KDR issued the title, it placed Associates' name in the "mailing information only" portion of the certificate, but did not show it as a lienholder.  The title receipt issued by KDR on May 8, 2000, also omitted reference to Associates

---

[1] 28 U.S.C. § 1334.

[2] 28 U.S.C. § 157(b)(2)(K).

[3] Dkt. 19.

as a lienholder. Moreover, according to the stipulations, as of the petition date, an electronic search of the KRD database would not reveal the filing of Associates' lien.

Associates granted a continuing irrevocable power of attorney to Creditor and assigned its interest in the debtors' obligation and security interest to Creditor effective May 2, 2005. Debtors filed this bankruptcy case on September 8, 2005.

Analysis

Section 544 of the Bankruptcy Code grants the Trustee the powers of an hypothetical lien creditor.[4] The Kansas Revised Uniform Commercial Code, KAN. STAT. ANN. § 84-9-317(a)(2)(A) (2005 Supp.), grants a lien creditor priority in an asset over the holder of an unperfected security interest.[5] Therefore, if Creditor's security interest is not adequately perfected at Kansas law, the Trustee may avoid that interest under § 544 and retain it for the benefit of the estate under § 551. This proceeding presents yet another nuance to the interpretation of the Kansas certificate of title laws (in this case, those pertaining to manufactured homes, KAN. STAT. ANN. § 58-4201 *et seq.* (2005)).

Associates held a purchase money security interest in the manufactured home.[6] A creditor perfects a purchase money security interest in a manufactured or mobile home by following the procedures outlined in KAN. STAT. ANN. § 58-4204. As set out at KAN. STAT. ANN. § 84-9-311(a)(2) and (b) (2005 Supp.), the filing of a financing statement is not necessary to perfect a lien

---

[4] 11 U.S.C. § 544(a). This case predates the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). References to Title 11 of the United States Code refer to the Bankruptcy Code as it existed prior to BAPCPA.

[5] Under KAN. STAT. ANN. § 84-9-102(52) (2005 Supp.) a trustee in bankruptcy is a lien creditor from the date of the filing of the bankruptcy petition.

[6] *See* KAN. STAT. ANN. § 84-9-103(b) (2005 Supp.).

3

subject to a certificate of title statute "which provides for a security interest to be indicated on the certificate as a condition or result of perfection." Section 84-9-311(b) states that "a security interest in [certificate of title property] may be perfected only by compliance with those requirements [of the certificate of title law]."

Here, the applicable certificate of title statute, KAN. STAT. ANN. § 58-4204 (2005), provides in part:

> (c) Upon the transfer or sale of any manufactured home or mobile home by any person or dealer, the new owner thereof . . . shall make application to the division [of vehicles] for the issuance of a certificate of title evidencing the new owner's ownership of such manufactured home or mobile home. . . . [*I*]*t shall state all liens or encumbrances thereon and such other information as the director may require*. Notwithstanding any other provision of this section, no certificate of title shall be issued for a manufactured home or mobile home having any unreleased lien or encumbrance thereon, unless the transfer of such manufactured home or mobile home has been consented to in writing by the holder of the lien or encumbrance. . . .
>
> (d) The director shall design a distinctive certificate of title to be issued to owners of manufactured homes and mobile homes, so as to be distinguishable from certificates of title issued to owners of vehicles. *The certificate of title shall contain a statement of any liens or encumbrances which the application discloses* . . .
>
> (f) . . . The certificate of title shall be good for the life of the manufactured home or mobile home while owned or held by the original holder of the certificate of title.
>
> (g) *Upon sale and delivery to the purchaser of every manufactured home or mobile home subject to a purchase money security interest, as provided for in article 9 of chapter 84 of the Kansas Statutes Annotated, and amendments thereto, the dealer or secured party may complete a notice of security interest and, when so completed, the purchaser shall execute the notice, in a form prescribed by the director, describing the manufactured home or mobile home and showing the name and address of the secured party and of the debtor* . . . The notice of security interest shall be retained by the division,

> until it receives an application for a certificate of title to the manufactured home or mobile home and a certificate of title is issued. *The certificate of title shall indicate any security interest in the manufactured home or mobile home. . . . The proper completion and timely mailing or delivery of a notice of security interest by a dealer or secured party shall perfect a security interest in the vehicle described on the date of such mailing or delivery.*

[Emphasis supplied].[7]

In the present matter, the parties stipulate that the NOSI and application were delivered to the Filing Office on May 8, 2000. If the Creditor's security interest is perfected, it is as of that date.[8] However, because the KDR has failed to indicate that the Creditor is a lienholder on the certificate of title and in its electronic system, Creditor's perfection remains in question. Creditor argues that the naming of Associates on the title, not in the lienholder portion, but in the "mailing information only" portion, should be sufficient to place anyone viewing the title on notice of Associates' and its successors' interest in the home. The Creditor relies on a Tenth Circuit case, *Morris v. The CIT Group/Equipment Financing (In re Charles).*[9] In that case, CIT leased the debtor Charles four trucks. The vehicles' titles referred to CIT, the lessor, as the "owner." The trustee argued that the leases were disguised financing sales and therefore, CIT had failed to adequately perfect its purchase money security interest in the vehicles by failing to file NOSIs with the Division of Vehicles. The trustee sought to avoid CIT's interests as unperfected, employing his hypothetical lien creditor

---

[7] KAN. STAT. ANN. § 58-4204(g) parallels the provision on motor vehicles found in K.S.A. 8-135(c)(5) (2005 Supp.).

[8] KAN. STAT. ANN. § 58-4204(g) provides for filing a NOSI within 10 days (not the 20 days provided for in KAN. STAT. ANN. § 8-135(c)(5) pertaining to vehicles) to retain priority as of the date of the security agreement. Here, the security agreement was executed April 18, 2000 and the application and the NOSI were filed on May 8, 2000, arguably perfecting the Creditor's security interest as of the May date.

[9] 323 F. 3d 841 (10th Cir. 2003).

5

powers under § 544. The bankruptcy court determined that the continual presence of CIT's name on the titles as an "owner" placed lien creditors on notice of CIT's interest. The Tenth Circuit Court of Appeals affirmed. In short, CIT had substantially complied with perfection requirements even though its name did not appear as lienholder on the title, because anyone reviewing the title would find evidence of CIT's interest.

In a subsequent adversary proceeding in the *Charles* bankruptcy case, this Court reached a similar conclusion. The Court determined that another truck lessor's lease was, in fact, a true lease. The Court also commented that, even if the lease in question were a disguised financing sale, the fact that the lessor's name was shown on the truck certificates of title as "owner" would have placed others on notice of the lessor's interest:

> This Court . . . is hard put to see how any lien creditor viewing the record would be misled when discovering Bancorp's name on the these vehicles' titles as owner rather than lienholder. At a minimum, a competing lender or prospective buyer would be placed on notice that Bancorp had *some* form of interest in the goods and any such interested party could then engage in appropriate inquiry both of the debtors and of Bancorp to determine the nature and extent of Bancorp's interest. That, after all, is the purpose of perfection in the first place. Were the Lease to be found to have created a secured transaction, Bancorp's security interests created thereunder would be properly perfected.[10]

The facts in the present proceeding are different and do not warrant the same conclusion. This Court sees a fundamental difference between a title that names a creditor as an "owner" and one that names the creditor as the intended recipient of mail and what a viewer of such titles might conclude from each. One viewing a title that recited someone other than the seller or borrower as an "owner" would absolutely be placed on notice of the named party's interest in the property.

---

[10] *Morris v. U.S. Bancorp Leasing and Financial (In re Charles)*, 278 B.R. 216, 226 (Bankr.D.Kan. 2002).

6

However, while the same viewer of the Jewells' certificate of title might pause to wonder why Associates was listed under "Mailing Information Only," the Court would not expect that viewer to conclude that Associates claimed an actual interest in the home or even be placed on inquiry concerning Associates' or its successors' interest. *Charles* is distinguishable on its facts.[11]

This leaves Creditor with the shopworn argument of last resort in cases where the filing office has erred: it did all it could do to perfect its lien, but was thwarted by intervening circumstances. This Court has treated and rejected this argument in several contexts. The Court reaches that conclusion by relying on the Kansas case, *Mid-American Credit Union v. Board of Commissioners of Sedgwick County.*[12] In that case, the filing office failed to note the Credit Union's lienholder interest on a title certificate. In determining that the filing office's negligence had in fact damaged the lender, the Kansas Court of Appeals reaffirmed its previous holding in *Beneficial Finance Co. v. Schroeder,*[13] where the court stated that a purchase money security interest in a vehicle may be perfected by noting its existence on the certificate of title or, in the case of a purchase-money lien, by mailing a notice of security interest.[14] When discussing the two available methods of perfection (notation on the certificate of title and filing a NOSI), the *Beneficial Finance*

---

[11] It is open to question whether the *Charles* court's reliance on the "seriously misleading" provisions found at former KAN. STAT. ANN. § 84-9-402(8) would apply in a case arising after the effective date of revised Article Nine, July 1, 2001.

[12] 15 Kan. App. 2d 216, 806 P.2d 439, *rev. denied* 248 Kan. 996 (1991).

[13] 12 Kan. App.2d 150, 737 P.2d 52, *rev. denied* 241 Kan. 838 (1987). This case also deals with a purchase-money security interest as opposed to a refinance.

[14] *Id.* at 151. *Beneficial* dealt with a security interest in a mobile home which was, at that time, subject to KAN. STAT. ANN. § 8-135(c). The terms of KAN. STAT. ANN. § 8-135(c)(5) are virtually identical to those of KAN. STAT. ANN. § 58-4204(g), the perfection statute applicable in this proceeding.

7

court interpreted KAN. STAT. ANN. § 8-135(c)(5) (1986 Supp.) as providing that the mailing or delivery of the NOSI perfects a secured party's interest only "during the period from attachment to notation on the certificate of title."[15] Stating that holding otherwise would diminish the reliability of certificates of title, the *Mid American* court held that "[t]he lien must be noted on the certificate of title to be perfected."[16] Because of the substantial similarity of the vehicle title statute and the manufactured home title statute, this Court considers itself bound to follow these decisions in determining what is necessary to perfect a purchase money security interest in a manufactured or mobile home.

Two recent decisions by federal courts sitting in this District bear mentioning here. In *Morris v. Boeing Wichita Credit Union (In re Hicks)*, United States Bankruptcy Judge Dale L. Somers held in similar circumstances that while a secured creditor had timely delivered documents to the filing office, including an NOSI, the failure of the office to place the lender's lien on the certificate of title rendered the lien unperfected and that the NOSI had lost its effectiveness upon the issuance of the certificate.[17] In reaching his conclusion, Judge Somers applied essentially the same logic and relied upon the same Kansas appellate decisions as this Court does above. On appeal to the United States District Court, District Judge Monti Belot reversed, holding that a NOSI's

---

[15] 12 Kan. App.2d at 151.

[16] 15 Kan. App.2d at 223 ("While notifying the KDR of a security interest is a method of perfecting a lien on a vehicle, it is only meant to perfect the lien until the certificate of title is issued. [citing *Beneficial Finance*] Allowing it to be a method of perfection beyond this period would again diminish the reliability of a certificate of title.").

[17] Adv. No. 04-5072; Case No. 03-16625 (Bankr. D. Kan. Sept. 14, 2005).

effectiveness lapses only upon the filing office's issuing an "appropriate" certificate of title.[18] Because the certificate of title in *Hicks* lacked a lien notation, it was not "appropriate" and therefore did not cause the NOSI to lapse.[19] Defendant did not raise the "appropriateness" issue here. While the "appropriateness" argument is facially attractive, it is of no help to the Creditor in this case because, whether or not Associates' NOSI remained effective after the certificate of title issued, the parties stipulated that an electronic search of the Division's records did not turn up the lien. In addition, this Court considers that if the certificate of title statutes are construed as allowing for continuing perfection by filing an NOSI even when the certificate of title omits mention of the lien, there is little purpose in having certificates of title or the practice of noting liens on them.

Because the Creditor's lienholder interest is not disclosed on the certificate and does not appear in the electronic records of the KDR, there is no way a prospective purchaser or lender could ascertain its interest. As this Court has stated before, insuring that certificates of title disclose the names of these parties having lien interests in the property "presumably promotes the trustworthiness of vehicle titles in commerce and furthers the purpose of providing notice of a creditor's claim against the vehicle, thereby avoiding the attachment and enforcement of secret liens. This serves the bedrock policy of our secured transactions law."[20] The Creditor's lien is not perfected because it is not noted on the Jewells' certificate of title.

Judgment should therefore be entered for the Trustee avoiding the Creditor's lien under § 544(a) and preserving same for the benefit of the estate under § 551. A Judgment on Decision will

---

[18] 2006 WL 1764119 at *3, No. 05-1370-MLB (D. Kan. Jun. 27, 2006).

[19] *Id.*

[20] *Morris v. Intrust Bank (In re Anderson),* ___ B.R. ___, 2006 WL 2850450 at *3 (Bankr. D. Kan. Oct. 2, 2006).

9

issue this day.

# # #